﻿Citation Nr: 18106782
Decision Date: 05/31/18 Archive Date: 05/31/18

DOCKET NO. 14-26 670
DATE: May 31, 2018
ORDER
Entitlement to a benefits payment rate in excess of 60 percent for educational assistance under Chapter 33 of Title 38 of the United States Code (Post-9/11 GI Bill) is denied.
FINDINGS OF FACT
1. The Veteran had creditable active duty service for Post-9/11 GI Bill purposes from March 16, 2003 to May 31, 2004, for a total of 443 days of qualifying active duty service.
2. The Veteran was not discharged from the relevant period of creditable active duty service due to a service-connected disability.

CONCLUSION OF LAW
The criteria for a benefits payment rate in excess of 60 percent for educational assistance under Chapter 33 of Title 38 of the United States Code (Post-9/11 GI Bill) have not been met. 38 U.S.C. §§ 3301, 3311, 3313, 5107 (2012); 38 C.F.R. §§ 3.102, 21.9505, 21.9640 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSION
The Veteran served on active duty in the United States Air Force from March 16, 2003 to May 31, 2004, with additional extensive service in the Air National Guard. 
In June 2008, Congress enacted the Post-9/11 Veterans Educational Assistance Act of 2008. See Pub. L. 110-252, Title V, §§ 5002-03 (June 30, 2008). The program was designed to provide education benefits to veterans who served on active duty after September 11, 2001. The provisions of the Act are codified at 38 U.S.C. §§ 3301 to 3324 (2017), with the implementing regulations found at 38 C.F.R. §§ 21.9500 to 21.9770 (2017). The Act is referred to as the Post-9/11 GI Bill. 
The Post-9/11 GI Bill defines “active duty” as full-time duty in the regular components of the Armed Forces or under a call or order to active duty under 10 U.S.C. §§ 688, 12301(a), (d), (g), 12302, 12304 (2016). Under regulations issued in March 2009, full-time National Guard duty performed pursuant to orders issued under Title 32 of the United States Code (i.e., “active duty for training”), was specifically excluded from the definition of “active duty.” 38 C.F.R. § 21.9505 (2017); see also 32 U.S.C. § 502 (2017); 38 U.S.C. § 101 (22)(C) (2017); 38 C.F.R. § 3.6 (c)(3) (2017).
In January 2011, the definition of “active duty” was expressly expanded for purposes of Post-9/11 GI Bill eligibility to include certain full-time service in the National Guard, as follows: (1) in the National Guard of a State for the purpose of organizing, administering, recruiting, instructing, or training the National Guard, or (2) in the National Guard under section 502(f) of Title 32 when authorized by the President or the Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds. 38 U.S.C. § 3301 (1)(C) (2016). The amended definition was given effect as of the date of original enactment of the Post-9/11 GI Bill. Pub. L. No. 111-377, § 101(d) (effective dates) (notably, the relevant regulation, 38 C.F.R. § 21.9505, has not yet been amended to incorporate the expanded definition of “active duty” as it now appears in the statute). 
Once an individual is found eligible for educational assistance benefits under Chapter 33, VA must determine the rate at which such benefits are payable. 38 U.S.C. § 3311 (2017); 38 C.F.R. § 21.9640 (2017). 
The aggregate length of creditable active duty service after September 10, 2001, determines the percentage of maximum amounts payable under the Post-9/11 GI Bill. The regulations provide the following percentages: 40 percent for at least 90 days, but less than 6 months, of creditable active duty service; 50 percent for at least 6 months, but less than 12 months, of creditable active duty service; 60 percent for at least 12 months, but less than 18 months, of creditable active duty service; 70 percent for at least 18 months, but less than 24 months, of creditable active duty service; 80 percent for at least 24 months, but less than 30 months, of creditable active duty service; 90 percent for at least 30 months, but less than 36 months, of creditable active duty service; and 100 percent for at least 36 months of creditable active duty service. 38 C.F.R. § 21.9640. In addition, as relevant in the present case, if a claimant served at least 30 continuous days of creditable active duty service and was discharged due to service-connected disability, 100 percent of maximum Chapter 33 benefits will be paid. 38 C.F.R. § 21.9640 (a).
In April 2013, the Veteran was awarded educational assistance benefits payable at a rate of 60 percent under Chapter 33, Title 38 of the United States Code. The Veteran seeks entitlement to benefits payable at a rate of 100 percent, contending that she served at least 30 continuous days of creditable active duty service and was discharged due to service-connected disabilities. 
Review of the record shows that the Veteran had qualifying active duty service for purposes of the Post-9/11 GI Bill from March 16, 2003 to May 31, 2004. Thus, the Veteran’s aggregate length of creditable active duty service is 443 days or approximately 1 year, 2 months and 15 days, which entitles her to a benefits rate of 60 percent for at least 12 months but less than 18 months of creditable service. Since the Veteran does not have 18 months or more of qualifying service, she is not entitled to a benefits rate in excess of 60 percent based solely on her aggregate length of creditable active duty service. See 38 C.F.R. § 21.9640 (a) (2017). 
The Board must also consider whether a benefits rate of 100 percent is warranted on the basis of 30 continuous days of creditable service and a discharge due to service-connected disability. See 38 U.S.C. § 3311 (2017); 38 C.F.R. § 21.9640 (a) (2017). The Veteran’s DD Form 214 shows that she was discharged from her period of creditable active service due to demobilization, not due to service-connected disability. However, she asserts that she is entitled to a benefits rate of 100 percent based on her discharge from the Air National Guard in 2010 due to service-connected disability. 
The record reflects that in July 2010, the Air Force Physical Evaluation Board found that the Veteran was physically unfit to continue military service due to a psychiatric disorder, neck and back disabilities, and disabilities related to a Tarlov cyst. The Veteran was relieved from active duty and placed on the temporary disability retired list (TDRL). In August 2010, the Veteran was ordered to retirement on the basis of the above-mentioned disabilities, for which she is now service connected. Thus, although the Veteran was discharged due to a service-connected disability, the discharge was from Air National Guard service, not from a period of creditable active duty service. See 38 C.F.R. § 21.9640 (a). In this regard, the Board notes that full-time National Guard duty performed under Title 32 of the United States Code is specifically excluded from the Post-9/11 GI Bill’s definition of active duty. In addition, although the January 2011 amendment to the Post-9/11 GI Bill expanded the definition of “active duty” to include certain full-time service in the National Guard, there is no evidence in the record that the Veteran had such service (i.e. for organizing, administering, recruiting or training the National Guard, or for responding to a national emergency as authorized by the President). 
The Board recognizes the Veteran’s extended period of honorable active duty service and Air National Guard service in support of our nation. However, the statutory scheme provides that the rate of payment of educational assistance is based on the length of service, and the Veteran’s aggregate length of creditable service entitles her to a benefits payment rate of 60 percent, but no greater, under the Post-9/11 GI Bill. Although a limited exception is carved out to provide a benefits payment rate of 100 percent where a disability incurred during active duty of at least 30 continuous days prevents a veteran from completing a longer period of creditable service, the record does not reflect that the Veteran qualifies for this exception. Congress did not enact any additional exceptions to the above-discussed legal provisions that would permit a grant of the requested benefits, and the Board has no legal authority to deviate from the law as written. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Accordingly, the applicable laws and regulations preclude granting the Veteran a benefits payment rate in excess of 60 percent, even on an equitable basis. See 38 U.S.C. §§ 503, 7104 (2017); see also Harvey v. Brown, 6 Vet. App. 416, 425 (1994). 

 
ROBERT C. SCHARNBERGER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Jeremy J. Olsen, Associate Counsel