﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/24/19

DOCKET NO. 190517-5608
DATE: June 25, 2019

ORDER

Entitlement to service connection for the cause of the Veteran’s death is denied.

Entitlement to Dependency and Indemnity Compensation (DIC) under 38 U.S.C. 1318 is denied.

FINDINGS OF FACT

1. The Veteran died in June 2017 from acute myelogenous leukemia.

2. The Veteran’s leukemia did not originate during and was not otherwise related to his active service, to include herbicide exposure.

3. The Veteran’s leukemia was not secondary to his prostate cancer or prostate cancer treatment.

4. The Veteran’s prostate cancer did not contribute to his death.

CONCLUSIONS OF LAW

1. The criteria for service connection for the cause of the Veteran’s death have not been met. 38 U.S.C. § 1310; 38 C.F.R. §§ 3.5, 3.102, 3.303, 3.307, 3.309, 3.310, 3.312.

2. The criteria for establishing entitlement to DIC under 38 U.S.C. § 1318 have not been met. 38 U.S.C. § 1318; 38 C.F.R. § 3.22.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Introduction

The Veteran served on active duty in the United States Army from June 1965 to April 1970. He passed away in June 2017. The appellant is his surviving spouse. 

This matter comes before the Board of Veterans’ Appeals (Board) on appeal of a rating decision issued by the Department of Veterans Affairs Regional Office (RO).

The Board has considered the appellant’s claims and decided entitlement based on the evidence or record. The appellant has not raised any other issues, nor have any other issues been reasonably raised by the record, with respect to her claims. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Burden of Proof

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Service connection for cause of death

Service connection for the cause of a veteran’s death is warranted if a service-connected disability either caused or contributed substantially or materially to the cause of the veteran’s death. 38 U.S.C. § 1310; 38 C.F.R. § 3.312.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). In addition, a disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a). Moreover, any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury will be service connected. 38 C.F.R. § 3.310(b).

The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. A service-connected disability will be considered as the principal, or primary, cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b).

A contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; or that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1); see also Gabrielson v. Brown, 7 Vet. App. 36, 39 (1994). The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the Veteran, including, particularly, autopsy reports. 38 C.F.R. § 3.312(a).

The Veteran died in June 2017. During his lifetime, he was service-connected for bilateral hearing loss. The Veteran’s death certificate lists his cause of death as acute myelogenous leukemia (AML). No contributory causes are listed.

The appellant has filed a claim for service connection for the cause of the Veteran’s death. She has asserted, first, that the Veteran’s leukemia was caused by exposure to herbicide agents during his service in Vietnam. In this regard, the Board notes that because the record shows the Veteran served in Vietnam during the Vietnam War, he is presumed to have been exposed to herbicide agents. See 38 C.F.R. § 3.307(a)(6). Second, the appellant has asserted that the Veteran’s prostate cancer and subsequent treatment caused his leukemia. In this regard, the Board notes that the Veteran was diagnosed with prostate cancer in 2014, at which time he underwent a prostatectomy and subsequent hormone therapy. The Board notes that prostate cancer is subject to presumptive service connection for veterans who were exposed to herbicide agents during service. See 38 C.F.R. § 3.309(e). As such, although the Veteran was not service connected for prostate cancer during his lifetime, the Board will consider the condition as having been service connected for purposes of its analysis of the claim for service connection for the cause of death.

Regarding the claim that the Veteran’s AML was caused by in-service herbicide exposure, the Board notes that chronic b-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia) are subject to presumptive service connection for veterans who were exposed to herbicide agents during service. See 38 C.F.R. § 3.309(e). However, there is no indication in the record the Veteran was ever diagnosed with a b-cell leukemia.

A medical opinion was obtained from a VA physician in May 2019. Following a review of the Veteran’s claims file and his medical records, the physician stated it was less likely than not that the Veteran’s AML was caused by his exposure to herbicides during service. In support of his opinion, the physician stated that the National Academy of Sciences (NAS) reviewed scientific evidence to determine to the extent possible whether there is a statistical association between suspected diseases and herbicide exposure, the increased risk of disease among individuals exposed to herbicides during service in the Republic of Vietnam, and whether there is a plausible biological mechanism or other evidence of a causal relationship between herbicide exposure and the suspect disease. The VA physician stated that based on cumulative scientific data, the NAS had determined there was no positive association between herbicide exposure and AML.

Regarding the claim that the Veteran’s AML was caused by his prostate cancer and subsequent treatment, the Board notes the appellant has submitted medical literature to the effect that prostate cancer patients treated with radiotherapy may be at a higher risk of later being diagnosed with AML.

Expert medical opinions were obtained from a VA physician in August 2018 and May 2019. The physician noted the Veteran had undergone a radical prostatectomy for adenocarcinoma in July 2014. He noted there was bilateral seminal vesical involvement with three of fourteen lymph nodes positive for metastasis. He stated the Veteran was started on periodic Lupron hormonal injections every three months. The physician noted that in March 2016 the Veteran presented with anemia, and subsequent testing showed AML, from which the Veteran died. The physician also noted that in 2016, the Veteran’s prostate-specific antigen (PSA) was .13, showing good suppression with the Lupron. 

The VA physician ultimately opined that it was less likely than not that the Veteran’s prostate cancer or treatment had significantly contributed to his death. In support of his opinion, the physician stated that the Veteran was not treated with radiation therapy, but instead with Lupron, which is a hormonal injection to suppress metastatic prostate cancer. The physician stated this medication had not been shown to cause AML. The physician further stated that prostate cancer is a solid adenocarcinoma that metastasizes to other solid organs, and that AML is a completely separate acute blood cell disorder that has its origin in the bone marrow cells and is not metastatic from the prostate.

The Board finds that the VA physician’s opinions are supported by a clear and well-reasoned analysis. The Board particularly notes the examiner’s finding that the Veteran’s prostate cancer was well controlled at the time of his 2016 AML diagnosis. Based on the foregoing, the Board finds the VA physician’s opinions constitute probative evidence against findings that the Veteran’s AML was associated with herbicide exposure, or was caused or aggravated by his prostate cancer, or that the Veteran’s prostate cancer contributed to his death.

The Board acknowledges that in November 2017, a private physician completed a VA examination report document and stated that leukemia was associated with Agent Orange exposure. The Board observes, however, that the private physician did not discuss the distinction between AML and b-cell leukemias, and otherwise provided no medical or other explanation in support of his or her opinion. As such, the Board finds the November 2017 opinion is of little probative value.

The Board has carefully considered the appellant’s contentions that the Veteran’s leukemia was caused by herbicide exposure and/or his prostate cancer and treatment. The Board observes, however, that the record does not demonstrate the appellant possesses the medical knowledge or training to provide a competent opinion as to the etiology of the Veteran’s leukemia. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Consequently, the Board must defer to the medical evidence of record regarding this issue.

After consideration of the foregoing, and of the entire record, the Board has determined a preponderance of the evidence weighs against the appellant’s claim. Accordingly, the benefit-of-the-doubt doctrine is inapplicable, and the claim must be denied.

Compensation under 38 U.S.C. § 1318

Pursuant to 38 U.S.C. § 1318, DIC benefits are payable to the surviving spouse of a deceased veteran, in the same manner as if the death were service connected, if the veteran died not as the result of his own willful misconduct and the veteran was, at the time of his death, either in receipt of or entitled to receive compensation for service-connected disability rated totally disabling if: (1) the disability was continuously rated totally disabling for a period of 10 or more years immediately preceding death; or (2) the disability was continuously rated totally disabling for a period of not less than five years from the date of such veteran’s discharge or other release from active duty; or (3) the veteran was a former prisoner of war who died after September 30, 1999, and the disability was continuously rated totally disabling for a period of not less than one year immediately preceding death. 38 U.S.C. § 1318; 38 C.F.R. § 3.22.

The term “entitled to receive” means that the veteran filed a claim for disability compensation during his lifetime and one of the following circumstances is satisfied: (1) the veteran would have received total disability compensation at the time of death for a service-connected disability rated totally disabling for the period specified but for clear and unmistakable error (CUE) committed in a VA decision on a claim filed during the veteran’s lifetime; or, (2) additional evidence submitted to VA before or after the veteran’s death consisting solely of service department records that existed at the time of a prior VA decision but were not previously considered by VA provides a basis for reopening a claim finally denied during the veteran’s lifetime and for awarding a total service-connected disability rating retroactively; or, (3) at the time of death the veteran had a service-connected disability rated totally disabling by VA, but was not receiving compensation because VA was paying the compensation to the veteran’s dependents; VA was withholding the compensation under authority of 38 U.S.C. § 5314 to offset an indebtedness of the veteran; the veteran had not waived retired or retirement pay in order to receive compensation; VA was withholding payments under the provisions of 10 U.S.C. § 1174 (h)(2); VA was withholding payments because the veteran’s whereabouts were unknown, but the veteran was otherwise entitled continued payments based on a total service-connected disability rating; or, VA was withholding payments under 38 U.S.C. § 5308 but determines that benefits were payable under 38 U.S.C. § 5309.38; C.F.R. § 3.22(b).

Here, the Board finds that the appellant’s entitlement to DIC benefits under 38 U.S.C. § 1318 has not been established. The Veteran was discharged from active service in April 1970. The Veteran was service-connected for bilateral hearing loss and assigned a 10 percent evaluation effective from April 10, 1985. Hearing loss was the Veteran’s only service-connected disability during his lifetime.

(Continued on the next page)

 

Based on the foregoing, at the time of the Veteran’s death, he was not rated as totally disabled for a service-connected disability for a period of ten years or more, nor for a period of five years from the date of his separation from active duty. Moreover, the Veteran was not a former prisoner of war. As such, the criteria for entitlement to DIC pursuant to 38 U.S.C. § 1318 are not met. Accordingly, the claim must be denied for lack of legal merit. See Sabonis v. Brown, 6 Vet. App. 426 (1994) (where the law, not the evidence, is dispositive, the appeal should be terminated for lack of legal merit or entitlement).

 

ANTHONY C. SCIRÉ, JR

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Hampton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.